UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

CANDACE GOLDSTEIN,

Debtor.

Chapter 13
Case No. 20-20406

### MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS

The issue before the Court concerns the "look-back" period in 11 U.S.C. § 522(b)(3)(A) and the extent to which Debtor Candace Goldstein (the "Debtor") can claim exemptions under Maryland law following her move to Maine prior to her bankruptcy filing.[1]  For the reasons set forth below, the objections of Chapter 13 Trustee Andrew M. Dudley (the "Trustee") to certain of those exemptions are hereby sustained.

### I.     Factual and Procedural History.

The Debtor resided in Maryland from November 2016 through November 2018. She eventually relocated to Maine and, on November 3, 2021, filed her petition for bankruptcy relief.   In schedules accompanying her petition, the Debtor claimed exemptions in various assets under Maryland state law.  The Trustee objected to most, but not all, of the Debtor's exemptions.  The Court conducted an initial hearing on the Trustee's objections on February 3, 2021 and then continued the matter several times while, *inter alia*, the Bankruptcy Appellate Panel for the First Circuit (the "Panel") considered the appeal of an order issued in In re O'Neil, 2020 WL 3634387 (Bankr. D.

---

[1] References to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq., (the "Bankruptcy Code") shall be "Bankruptcy Code § _____".

Me. June 19, 2020), pursuant to which Judge Michael A. Fagone overruled the Trustee's objections to an exemption on a similar issue under the same Maryland statute.

As of the last hearing held on this matter, on April 28, 2021, no ruling had issued in the O'Neil appeal, but a decision was expected in short order. This expectation, coupled with confirmation from Debtor's counsel that no amendments to the Debtor's exemption claims would be forthcoming, led the Court to take the matter under advisement pending the Panel's decision. On May 24, 2021, the Panel dismissed O'Neil for lack of jurisdiction, leaving this Court to forge ahead to make its own determination as to the Trustee's objections. Dudley v. O'Neil (In re O'Neil), 2021 WL 2069922 (1st Cir. B.A.P. May 21, 2021).

## II. The Applicable Law.

Generally, upon the commencement of a bankruptcy case, all of the debtor's legal and equitable interests in property become part of the bankruptcy estate. Bankruptcy Code § 541(a). With some exceptions, the Bankruptcy Code permits a debtor to remove, or claim as exempt, certain property under either the federal exemption scheme or the applicable state law exemption scheme. Bankruptcy Code § 522(b)(2), (3)(A) and (d). Congress imposed limits on a debtor's choices. For example, if an applicable state "opts out" of the federal exemption scheme, a debtor may only use the state law exemptions. Bankruptcy Code § 522(b)(1) and (2). Therefore, a debtor must first look to the applicable state law to determine whether a choice of exemptions exists. At least thirty-two states curtail debtors' choices and have opted out of the federal exemption scheme, thus leaving debtors to rely on state law exemptions. W. Brown, L. Ahern, N. MacLean, Bankr. Exemption Manual § 4:2 (2021 ed.).

When Congress amended the Bankruptcy Code and enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), it lengthened the domiciliary requirement to prevent debtors from moving to a state with more generous exemption provisions on the eve of bankruptcy. Post BAPCPA, if a debtor lived in more than one state during the 730-day period leading up to the bankruptcy filing, the applicable state for exemption purposes is the state in which the debtor resided in the 180 days immediately preceding the 730-day look-back period. Bankruptcy Code § 522(b)(3)(A); In re Withington, 594 B.R. 696, 700 (Bankr. D. Colo. 2018). It also created, in the so-called "hanging paragraph" of Bankruptcy Code § 522(b)(3), a safety net to provide exemption protection for debtors in opt-out states who would otherwise be ineligible for exemptions because of the application of Bankruptcy Code § 522(b)(3)(A).[2]

### III. Issues and Positions of the Parties.

The parties agree that when it comes to claiming exemptions, the state law applicable to the Debtor is Maryland state law. Bankruptcy Code § 522(b)(3)(A). As an "opt-out" state, Maryland has divided its exemption scheme into two parts; one describing exemptions available to any individual required to look to the laws of that state under Bankruptcy Code § 522(b)(3)(A) and a second part listing exemptions made available only to individuals domiciled in the state of Maryland. Md. Code Ann., Cts. & Jud. Proc. § 11-504(b), (g).[3] The first set of exemptions lists nine categories of personal

---

[2] This provision, which is referred to in myriad ways including "safe harbor", "safety net" and "hanging paragraph", provides: "[i]f the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)." For sake of clarity, this language will be referred to as the "hanging paragraph".

[3] The Maryland Exemptions Statute, found at Md. Code Ann., Cts. & Jud. Proc. § 11-504, will be referred to here as "Md. Code § 11-504(__)."

property and interests, including a tools-of-the-trade exemption defined as "wearing apparel, books, tools, instruments, or appliances, in an amount not to exceed $5,000 in value necessary for the practice of any trade or profession . . ." Md. Code § 11-504(b)(1).

The Debtor claimed an exemption in "household goods" under this tools-of-the-trade exemption, to which the Trustee objects, on the grounds that the general term "household goods" does not qualify under the specific language used to describe the tools-of-the-trade exemption in Md. Code § 11-504(b)(1). He argues that the Debtor, a radiology technician, did not provide enough specificity to allow the Trustee or the Court to determine whether any of her household goods qualify under this exemption.[4] Counsel for the Debtor acknowledges that the Trustee will likely prevail on this objection but declined several invitations by the Court to amend her Schedule C.[5]

The second set of Maryland exemptions includes a homestead exemption and a wild card exemption available only in a bankruptcy proceeding and only to "any individual debtor domiciled in this State." Md. Code § 11-504(f). The Debtor claimed exemptions in 15 Dolomite Drive, Unit 2-41A, a 2011 Honda Accord, household goods,

---

[4] The Trustee also objected to the Debtor's claim of exemption in "clothes" as tools of trade. The Court sustained this objection at a February 23, 2021 hearing for the reasons set forth on the record of that hearing.

[5] Counsel for the Debtor conceded that the Debtor's household goods may be more appropriately claimed under Md. Code § 11-504(b)(4) but argued that language in subparagraph (c) requiring a sheriff's appraisal at the time of levy precluded the Debtor from claiming this exemption in the context of a bankruptcy proceeding. This argument is inconsistent with a prior position taken by the Debtor. In addition to the objections discussed here, the Trustee originally also objected to the Debtor's claim of a $6,000 exemption in 15 Dolomite Drive, Unit 2-41A, under Md. Code § 11-504(b)(5) on the basis that the exemption requires an attachment or levy. The Debtor responded, ". . . even though Maine's and Maryland's statutes were enacted to exempt from attachment and execution in a state law proceeding, those statutes can be applied to protect property in bankruptcy regardless of whether a creditor has attempted to attach and execute a lien against those assets. A holding to the contrary would eliminate all exemptions in both states except those rare instances where judgment liens had attached." D.E. 17 at para. 4. The Trustee subsequently withdrew the objection after further research led him to agree with the Debtor.

4

clothing, jewelry, and a Bank of America checking account under the wild card exemption found at Md. Code § 11-504(f)(1). The Trustee argues that the Debtor, a Maine resident, is not entitled to claim the wild card exemption. The Debtor counters that, if the Trustee is correct, she is entitled to claim federal exemptions under the "hanging paragraph" in Bankruptcy Code § 522(b)(3).

The Court turns first to the objection to the tools-of-the-trade exemption and then to the larger, more complex question of whether the Debtor is eligible to claim the wild card exemption.

### IV. Analysis

*A. The Tools-of-the-Trade Exemption Claimed in Household Goods Under Md. Code § 11-504(b)(1).*

A debtor is required to list the assets he or she claims as exempt from the bankruptcy estate. Fed. R. Bankr. P. 4003(a). This Court's local rules require a debtor to "disclose the debtor's exemption claims with meaningful particularity and the debtor must be prepared to provide detailed information regarding the assets claimed as exempt at the meeting of creditors." D. Me. LBR 4003-1. The Debtor has made no such effort with respect to her claim of exemption in "household goods" under Maryland's tools-of-the-trade exemption.

The term "household goods" is not explicitly included in the list of personal property comprising the tools-of-the-trade exemption. Md. Code § 11-504(b)(1). While the Debtor may have used that term in her Schedule C as a reference to personal property in the form of "wearing apparel, books, tools, instruments, or appliances" the Trustee argues that, on its face, the generic and vague phrase "household goods" does not support

5

a valid exemption under Md. Code § 11-504(b)(1). Although the Trustee raised this issue at least as early as his objection filed with the Court on December 29, 2020, the Debtor steadfastly refused to provide any further information to the Trustee or the Court over the next several months of continued hearings.

On its very face, the term "household" is seemingly at odds with the purpose of the tools-of-the-trade exemption, which is to protect assets necessary to engage in commercial activity. Viewed in its entirety, the Maryland exemption scheme is carefully crafted to exempt separate, specific categories of personal and real property and evidences a coordinated effort to avoid overlap and duplication between those categories. Property described as "household goods" fits squarely within Md. Code § 11-504(b)(4) which exempts from judgment, a "debtor's interest, not to exceed $1,000 in value, in household furnishings, *household goods*, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for the personal, family, or household use of the debtor or any dependent of the debtor." Md. Code § 11-504(b)(4) (emphasis supplied). While both subparagraph (b)(1) and subparagraph (b)(4) exempt wearing apparel and books, the other items contained in each list make clear that the character of the wearing apparel and books exempted under each subparagraph is different. Subparagraph (b)(4) exempts everyday clothes and books purchased for entertainment or self-improvement while subparagraph (b)(5) exempts uniforms and manuals. Without more information, the Court simply cannot find that the phrase "household goods" describes the type of property listed in Maryland's tools-of-the-trade exemption.

Even if one could make the argument that "wearing apparel, books, tools, instruments, or appliances" somehow includes "household goods," however, the Debtor

6

would have had to explain, in the absence of any clear relationship, the necessity of the "household goods" to her work as a radiology technician. The importance of establishing the nexus between the property being claimed as exempt and the necessity of those goods to a debtor's trade or profession was emphasized by the Maryland Court of Appeals after the United States District Court for the District of Maryland sought guidance on the applicability of the tools-of-the-trade exemption under Md. Code § 11-504(b)(1). In re Taylor, 537 A.2d 1179 (Md. 1988).

The Taylor court noted that, unlike other exemptions set forth in Md. Code § 11-504(b), subparagraph (b)(1) is not limited in value and, therefore, the large, mobile farming equipment the debtors sought to exempt in that case was not disqualified solely by virtue of its significance or worth. Taylor, 537 A.2d at 1185. The issue with respect to the tools-of-the-trade exemption is not the value of the property a debtor seeks to exempt, but the purpose of that property. Id. at 1186. To successfully claim an exemption under Md. Code § 504(b)(1) a debtor must show that the property is necessary to the debtor's trade or profession and, critically, that the necessity is reasonable. Id. ("The items must be *reasonably* necessary to qualify for exemption").

The Court cannot judge the reasonableness of an explanation that has not been offered in the first instance. As the Debtor has not provided any rationale as to how the overly broad category of property she is claiming as exempt is necessary to her profession, the Trustee's objection is sustained.

  B. *The Wildcard Exemptions Claimed under Md. Code § 11-504(f)(1)(i)(1).*

Turning now to the more involved inquiry, the Trustee also objected to the Debtor's claim of a wild card exemption in 15 Dolomite Drive, Unit 2-41A, a 2011

7

Honda Accord, household goods, clothing, jewelry, and a Bank of America checking account on the grounds that the Debtor, a resident of Maine, is ineligible to claim the exemptions listed under Md. Code § 504(f). The Debtor disagrees.

The plain language of § 522 does not provide this Court with a clear answer. As one court understatedly noted, "[t]he text of § 522(b) is not the most straightforward of statutes and is susceptible to multiple different readings . . ." Fernandez v. Miller (In re Fernandez), 2011 WL 3423373, at *15 (W.D. Tex. Aug. 5, 2011). Courts are split as to the effect of residency limitations contained in state exemption schemes and the First Circuit has yet to weigh in on the issue. In the absence of clear precedent, this Court has reviewed case law across jurisdictions. Every opinion on this issue seems to take a slightly different approach, but one court has roughly distilled the varying analyses into three distinct approaches to interpreting the intersection of § 522(b)(3) and state exemption laws: anti-extraterritoriality, preemption, and state specific. Fernandez, 2011 WL 3423373, at *6. *See also*, Sheehan v. Ash, 574 B.R. 585, 591 (N.D. W. Va. 2017), *aff'd*, 889 F.3d 171(4th Cir. 2018).

(i) The anti-extraterritoriality approach.

The first approach Fernandez discussed, and quickly rejected, was the anti-extraterritoriality interpretation adopted by the bankruptcy court in In re Fernandez, 445 B.R. 790 (Bankr. W.D. Tex. 2011). Under this approach, state laws have no extraterritorial effect and, therefore, debtors are precluded from claiming exemptions to protect property in one state under the laws of another state. Fernandez, 2011 WL 3423373 at *7. The Fernandez court observed that the bankruptcy court was the only court to endorse the anti-extraterritoriality view, and quickly dispatched this analysis

8

because "it has long been the rule that a state may give effect to another state's laws when its own rules of comity require it." Id., 2011 WL at *7-8. Additionally, the Fernandez court noted that, "under this reading, any debtor who has not resided in his current state of domicile for at least 730 days would not be able to use any state exemptions, and would only be able to use the federal exemptions." Id. at *10. If that were Congress' intention, it would be far simpler to require debtors who move within 730 days of filing the petition to use federal exemptions. There would be no need to jump through the hoops of the "elaborate procedure" proscribed in Bankruptcy Code § 522(b)(3)(A) and the hanging paragraph would be rendered entirely superfluous. Id. This Court agrees and will not follow this approach.

    (ii)    The preemption approach.

A second method by which to interpret Bankruptcy Code § 522(b) is the preemption approach. This interpretation begins with the idea that this provision is a choice of law rule. Fernandez, 2011 WL 3423373 at * 17 ( ". . . territoriality or residency requirements in a state's substantive laws are equivalent to a form of choice of law rule, and so should be equally disregarded when applying that state's law under choice of law rules").

There are three types of preemption: express, occupy the field and conflict. Fernandez, 2011 WL 3423373, at *19. *See also*, Sheehan v. Pevevich, 574 F.3d 248, 252 (4th Cir. 2009). The Fernandez court analyzed all three arguments but found them lacking. It uncovered no statutory language or legislative history expressly preempting state residency limitations. Fernandez, 2011 WL 3423373, at *19. Arguments in favor of implied preemption likewise failed. The court concluded that Congress did not

sufficiently legislate in this area to have occupied the field and despite the relative strength of the conflict preemption argument the court ultimately found that the hanging paragraph resolves any potential conflict between Bankruptcy Code § 522(b) and state residency limitations. Fernandez, 2011 WL 3423373, at *19-20. The court noted that a finding of implied preemption is even more unlikely given Congress' express deference to state law in the exemption field. Fernandez, 2011 WL 3423373, at *19. This deference, coupled with the fact that the majority of pre-BAPCPA case law adopted the state-specific view discussed below, suggests that, if Congress had intended to preempt state residency limitations, it would have made that intent clearer. Id.

Although the word "preemption" does not appear in the O'Neil decision, its rationale closely aligns with the preemption view adopted by other courts. In re O'Neil, 2020 WL 363438,7 at * 3 (Bankr. D.Me. June 19, 2020). The O'Neil court first held that the "unmistakable import" of Bankruptcy Code § 522(b)(3)(A) is that it creates a "legal fiction" pursuant to which "a debtor is deemed to be domiciled in the state whose law is applicable under [that section]." Id. It then went on to find that, even if no such fiction is created, state residency requirements conflict with the choice of law provision in Bankruptcy Code § 522(b)(3)(A) and, therefore, those limitations should not be recognized. O'Neil, 2020 WL 3634387, at *3 ("It would make little sense for the Bankruptcy Code to honor—as a matter of federal bankruptcy law—features of state law that would undermine section 522(b)(3)(A)'s choice of law selection."). *See, e.g.* In re Garrett, 435 B.R. 434, 451-452 (Bankr. S.D. Tex. 2010) ("[I]t is irrelevant whether the North Carolina legislature, or any other state legislature, previously sought to restrict its exemptions to state residents: Federal law, the supreme law of the land, dictates that state

10

exemption statutes will be applied extraterritorially pursuant to § 522(b)(3)(A)"). The O'Neil court concluded that "applying the exemption laws of the state specified in section 522(b)(3)(A) without regard to any domiciliary restrictions in that state law is consistent with both the text of section 522 and with the axiom that exemptions laws are to be construed liberally in favor of the debtor." Id. at *4.

While the Court finds merit in the preemption approach, it declines to adopt it for several reasons. As noted above, there is nothing in the statutory text or the legislative history which supports an intent by Congress to preempt limitations on the applicability of its exemptions. If Congress so intended, it could have easily and explicitly stated its intent to preempt the state exemption laws which are provided so much deference in Bankruptcy Code § 522. See, In re Long, 470 B.R. 186, 190 (Bank. D. Kan. 2012) ("I cannot conclude that Congress intended to preempt state exemption law when it enacted a statute that expressly provides for state law to apply when the debtor chooses, and, indeed, to apply exclusively when the state opts out of the federal exemption scheme"). See also, In re Townsend, 2012 WL 112995, at *6 (Bankr. D. Kan. Jan. 12, 2012); In re Cole, 2011 WL 3207369, at *3 (Bankr. S.D. Ind. July 26, 2011).

Critics of this argument point to case law finding that Congress' deference to states in this area is not complete. See O'Neil, 2020 WL 3634387, at *3 (collecting cases). While there are times when federal courts override state law exemption limitations in favor of the policies informing Congress' formulation of the Bankruptcy Code, nothing in Bankruptcy Code § 522(b)(3)(A) suggests that Congress intended to limit the authority it gave to states to legislate exemptions. In fact, the language of that section, coupled with the hanging paragraph, strongly indicates Congressional intent to

allow states to continue legislating their own exemption statutes while providing a safety net for debtors.

> The Camp bankruptcy court had reasoned that residency restrictions in a state's exemption laws are choice of law provisions, that § 522(b)(2) and (b)(3)(A) are also choice of law provisions, and that when the Bankruptcy Code provisions say the exemption laws of a particular state apply to a debtor, the state's choice of law provisions that would make its exemptions unavailable to that debtor conflict with the Bankruptcy Code and are preempted. This reasoning might be sound if the Bankruptcy Code provisions did not establish any federal exemptions but merely adopted state exemption laws for all debtors, and the rules in § 522(b) simply established which state's laws would apply in each case. Perhaps because so many states have exercised the opt-out option, it is easy to forget that § 522(b) in fact does something quite different. First, it adopts a default rule that all debtors can claim either (1) the federal exemptions or (2) the applicable state-law exemptions plus nonbankruptcy federal exemptions. Then it authorizes the states to eliminate option 1 in some cases. Finally, under the BAPCPA amendments, it provides a back-up protection that restores a debtor's option to choose the federal exemptions in the event the domiciliary requirement of § 522(b)(3)(A) would render that particular debtor ineligible for any exemptions. As the Tenth Circuit Bankruptcy Appellate Panel suggested in Stephens, it does not appear that Congress was trying to preempt any state laws in § 522(b), but instead that it intended to authorize the states in some cases to preempt federal exemption law that would otherwise apply.

Townsend, 2012 WL 112995, at *6 (*citing* In re Camp, 396 B.R. 194 (Bankr. W.D. Tex. 2008) (Camp I) (*overturned*, Camp v. Ingalls (In re Camp), 631 F.3d 757 (5th Cir. 2011) (Camp II); Stephens v. Holbrook (In re Stephens), 402 B.R. 1 (10th Cir. B.A.P. 2009)). In this light, the hanging paragraph actually *resolves* any conflicts which might otherwise form the basis for conflict preclusion. Indeed, this is the way most courts have interpreted the hanging paragraph. *See, e.g.*, Shell v. Yoon (In re Shell), 499 B.R. (N.D. Ind. 2003); Cole, 2011 WL 3207369, at *3; In re Nickerson, 375 B.R. 869 (Bankr. W.D. Mo. 2007); In re Underwood, 342 B.R. 358 (Bankr. N.D. Fla. 2006).

While critics of the preemption interpretation argue that the approach renders the hanging paragraph largely superfluous, advocates assert that it serves other purposes.

12

<u>Garrett</u>, 435 B.R. at 450-451; <u>O'Neil</u>, 2020 WL 3634387 at FN 4. By way of example, <u>Garrett</u> outlined three scenarios in which the hanging paragraph would have meaning under the preemption approach: (1) a debtor who was temporarily domiciled overseas during the look-back period; (2) a recent immigrant; and (3) a husband or wife filing in different states. <u>Garrett</u>, 435 B.R. at 450-51. This Court finds it difficult to believe that Congress drafted the hanging paragraph with these remote circumstances in mind. This is particularly true given the fact that Congress added this language at the same time it amended Bankruptcy Code § 522(b)(3)(A) to extend the look-back period.

> Given that the extended look-back provision created an increased potential for a disconnect between current state of domicile and the exemptions available from the former state of domicile, the Court finds it likely that Congress intended the hanging paragraph to address any problems that might arise from that potential disconnect. Thus, even if some of the <u>Garrett</u> court's scenarios work to prevent the hanging paragraph from becoming surplusage, they do not negate the Court's conclusion that Congress intended the hanging paragraph to alleviate some of the possible harsh effects of state exemption law eligibility requirements.

<u>Fernandez</u>, 2011 WL 3423373 at *21. This Court interprets Congress' addition of the hanging paragraph as an effort to eliminate any conflict preemption concerns rather than to address the extremely uncommon examples described in <u>Garrett</u>.

In light of the foregoing, this Court concludes that the most logical and plain reading of the statute requires courts to give effect to residence requirements in state exemption laws and, therefore, rejects the preemption approach.

(iii)     <u>The state-specific approach</u>.

Finally, the majority view, and the one the Trustee urges this Court to adopt, is the state-specific approach. "Generally, under this approach, if the state's exemption statutes or decisional authority interpreting them do not explicitly limit the use of the exemption

13

laws to in-state residents or to in-state property, then the bankruptcy court should apply the state's exemption laws to a debtor's property, wherever located." Fernandez, 2011 WL 3423373 at * 11. If they do contain such limitations, however, those limitations are recognized and observed. Id. at *12. The Fernandez court determined that this interpretation is both in line with the majority view and constitutes the most plausible interpretation of Bankruptcy Code § 522 when considering the BAPCPA amendments. Id. at *11-12.

The Fernandez court acknowledged that courts adopting the state-specific approach are varied in their rationale but noted that most such courts take the view that Bankruptcy Code § 522 is a choice of law statute. Fernandez, 2011 WL 3423373 at * 11. Once the applicable state exemption statute has been determined under this federal choice of law provision, the courts look to the law of the state to determine the extent to which the statute may be applied. Id. at *12. The Fernandez court further observed that most state exemption schemes contain express limitations on extraterritorial application, "[b]ut regardless of the exact content of the state law or how courts go about determining it, that bankruptcy courts look to state law when deciding which exemptions to apply is what is significant." Id. This is the approach the Fernandez court chose, and it is the view that this Court will also adopt.

While the state-specific approach has its critics, the arguments raised to discredit this interpretation are more easily overcome than those raised in opposition to the preemption approach. For instance, some argue that the state-specific interpretation yields an absurd result where, as in Idaho and Wisconsin, a state's exemption scheme

14

directs a debtor to look to the laws of another state.[6] *See e.g.,* Camp I, 396 B.R. at 200. In those instances, state statutes would be dictating that the laws of another state apply. The Fernandez court resolved this issue, however, by putting a finer point on the choice of law principles forming the basis of the state-specific approach. "Since the kind of exemption law in force in Idaho and Wisconsin is in effect a state choice of law rule, as opposed to a requirement that applies only to the availability of that state's exemption laws, bankruptcy courts should disregard this type of provision in state statutes when examining state exemption law." Fernandez, 2011 WL 3423373, at * 13. This Court finds this explanation both reasonable and consistent with choice of law principles.

The Garrett court offered yet another criticism of the state-specific approach. Specifically, that court contends that, if any interpretation renders the hanging paragraph superfluous, it is the state-specific view, not the preemption approach. Garrett, 435 B.R. at 444-46. Unlike the Maryland exemption statute before this Court, the North Carolina statute at issue in Garrett not only limited the exemptions themselves to residents, but also its opt-out statute. Id. at 443. The Garrett court argued that effect cannot be given to one residency requirement (the limitation on claiming exemptions) and not the other (the limitation on the applicability of the opt-out provision). Id. In other words, if the court were to adopt the trustee's argument that only North Carolina residents are eligible to claim exemptions, it would also be true that only North Carolina residents are precluded from claiming federal exemptions. Under Bankruptcy Code § 522(b)(1) a debtor is *always* permitted to choose between federal and state exemptions *unless* the applicable

---

[6] The exemptions statutes of both states provide that nonresidents are entitled to exemptions provided by the law of their state. *See, e.g.* I.C. § 11-602(1) and W.S.A. 815.18(5). No such language exists in Maryland's exemption statute.

15

state has opted out of the federal exemption scheme. Id. Therefore, the debtor—a nonresident of North Carolina—would be eligible to claim federal exemptions under Bankruptcy Code § 522(b)(1) without resorting to the hanging paragraph. Id.

The argument is not without merit but, as the Garrett court conceded, at least seven states, including Maryland, limit the availability of some or all of their exemptions to residents but do not so limit their opt-out provisions. Garrett, 435 B.R. at n. 13.

> Finally, the Court notes that, as the Garrett court conceded, at present the hanging paragraph saves debtors formerly domiciled in one of at least seven states, who would otherwise be ineligible for any exemptions. See Garrett, 435 B.R. at 444 n. 13; Brown et al., *supra,* App. C (listing the opt-out rules and extraterritoriality requirements for all the states). The Court finds it much more likely that Congress intended the hanging paragraph to handle the problem posed by seven states' laws than that it intended to aid foreign debtors or debtors recently returning to the United States from foreign countries. Because the hanging paragraph appears intended to assist in the event that a state restricts the extraterritorial effect of its exemptions, the Court finds that the total preemption argument is not persuasive, notwithstanding the existence of other possible scenarios to which the hanging paragraph might apply.

Fernandez, 2011 WL 3423373, at *21. In those instances, the hanging paragraph is essential to allow debtors the opportunity to claim federal exemptions. Id. Simply put, the purpose behind the hanging paragraph is much clearer under the state-specific approach than the preemption approach.

In addition to the statutory construction, there is one final factor weighing in favor of the state-specific approach. Congress enacted BAPCPA in April of 2005 and it became effective in October of 2005. Since that time, an overwhelming number of courts considering the issue have held that nonresident debtors are precluded from claiming exemptions under statutes limited to those domiciled in the applicable state. *See, e.g.*, Camp II, 631 F.3d at 760; Shell, 499 B.R. at 616; In re Abel, 622 B.R. 312 (Bankr. D.

16

Utah 2020); Withington, 594 B.R. at 706-707; In re Capelli, 518 B.R. 873 (Bankr. N.D. W. Va. 2014); In re Rody, 468 B.R. 384 (Bankr. D. Ariz. 2012); Long, 470 B.R. 190-91; In re Footen, 2012 WL 669849 (Bankr. D. Oreg. February 29, 2012); Townsend, 2012 WL 112995, at *7; In re Beckwith, 448 B.R. 757 (Bankr. S.D. Ohio 2011); Cole, 2011 WL 3207369, at *4; In re Nickerson, 375 B.R. at 872; In re Underwood, 342 B.R. at 362. If this state-specific interpretation runs counter to Congress' purpose, that legislative body has had ample time to clarify its intent.

For the foregoing reasons, the Court hereby sustains the Trustee's objection to the Debtor's claim of exemptions in 15 Dolomite Drive, Unit 2-41A, a 2011 Honda Accord, household goods, clothing, jewelry, and a Bank of America checking account under Md. Code § 11-504(f)(1)(i)(1).

    C.    *The Availability of Federal Exemptions.*

The Court feels compelled to address a final issue which may flow from its order sustaining the Trustee's objection. While the following analysis is dicta, the Court hopes that this discussion helps inform any amendments Debtor's counsel might make as a result of this decision. Counsel for the Debtor appears to believe that the Debtor is only entitled to claim federal exemptions if *none* of Maryland's exemptions are available to her.[7] That view is not entirely without basis. The question is whether the word "any" in the hanging paragraph's phrase "ineligible for *any* exemption" is intended to mean any

---

[7] In an unprecedent move, Debtor's counsel orally objected to the Trustee's withdrawal of his objection to the claim of exemption in 15 Dolomite Drive under Md. Code § 11-504(b)(5). Counsel for the Debtor seemed to suggest that by withdrawing the objection, the Trustee was trapping the Debtor within the confines of the Maryland exemption scheme in the event the Court overruled the Trustee's residency objections. Counsel likewise staunchly refused to amend Debtor's schedules to claim state law exemptions for which Debtor easily qualified, choosing instead to shoehorn those assets into exemptions which clearly did not encompass the property in which Debtor claimed the exemptions. Even when the Court and the Trustee pointed to more viable exemptions, counsel presented arguments against the availability of those exemptions, which ran counter to the Debtor's initial responses to the Trustee's objections.

one particular exemption or any and all exemptions. The issue presents here because, unlike some state exemption schemes containing a residency limitation for the entire exemption scheme, Maryland's domiciliary requirement extends to just one group of exemptions. While the availability of exemptions under Md. Code § 504(f) is limited to residents, a debtor is free to claim any or all of the exemptions under Md. Code § 11-504(b) regardless of the debtor's state of residency.

Courts are seemingly just as divided on this issue as they are on the question of whether residency requirements are preempted by § 522(b)(3)(A). At least one court has held (on two occasions) that a debtor is not entitled to claim federal exemptions under the hanging paragraph unless the debtor is ineligible to claim *any* exemptions under state law. *See*, In re Katseanes, 2007 WL 2962637 at *3 (Bankr. D. Idaho Oct. 9, 2007) (holding that a debtor could not claim a homestead exemption under federal law where Utah exemption statute limited homestead to property located within the state but no such restriction existed with respect to other categories of property); In re Capps, 438 B.R. 668, 674 (Bankr. D. Idaho 2010) (". . . to allow a debtor to utilize the federal exemptions provided by § 522(d), the debtor must be ineligible for all state exemptions in all potential states"). Others have held that eligibility for one or more state exemptions does not preclude a debtor from claiming federal exemptions under the hanging paragraph. *See*, Withington, 594 B.R. at 706 (holding that a debtor could claim a federal homestead exemption where the applicable state homestead exemption was limited to property located within the state, despite the debtor's eligibility to claim other state law exemptions); In re Kelsey, 477 B.R. 870, 878-79 (Bankr. M.D. Fla. 2012) (permitting a

debtor to claim both a federal homestead exemption and Colorado exemptions in personal property).

This issue is not before the Court today, but for what it is worth to the Debtor as she plans her next steps, the Court finds the approach set forth in <u>Withington</u> and <u>Kelsey</u> to be most consistent with the policy of liberally construing exemptions in favor of debtors.  Therefore, it is likely this Court would permit a debtor barred from claiming a particular exemption under applicable state law to claim that exemption under Bankruptcy Code § 522(d) even if the debtor qualified for other exemptions under state law.  A debtor is limited, however, to federal exemptions which the debtor would have been able to claim under state law but for limitations on residency or extraterritorial application.

> Read as a whole, the statute allows a debtor to claim either bankruptcy exemptions under (2) or non-bankruptcy exemptions under (3). But if a state has opted out of the bankruptcy exemptions, then as a general rule the bankruptcy exemptions are not an available choice for the debtor in that state. He is stuck with the state law exemptions. If applicable state law does not provide for an exemption for a certain kind of property, then it is not the Domiciliary Provision that has harmed him, but only state law. The Safety Net is not implicated merely because the debtor cannot claim exemptions for everything available under the Bankruptcy Code or under his new state's laws. It is only applicable when state law and the Domiciliary Provision combined have caused him to lose an otherwise available non-bankruptcy exemption.

<u>Withington</u>, 594 B.R. at 706-07.  In other words, an exemption is not unavailable for purposes of the hanging paragraph simply because the state has not provided an exemption for a particular type of property.  The Debtor should keep these comments in mind when amending her Schedule C.

## V. Conclusion

For the foregoing reasons, the Trustee's objections are hereby SUSTAINED with respect to the Debtor's claim of exemptions in: (1) household goods under Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(1); and (2) 15 Dolomite Drive, Unit 2-41A, a 2011 Honda Accord, household goods, clothing, jewelry, and a Bank of America checking account under Md. Code § 504(f)(1)(i)(1).  The Debtor's claim of exemption in clothing under Md. Code § 11-504(b)(1) was previously sustained and the Trustee withdrew his objection to 15 Dolomite Drive, Unit 2-41A under Md. Code § 11-504(b)(5).

A separate Order shall enter.